UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TAMMY LYNN WAGERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 21-026-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of the Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tammy Lynn Wagers appeals the decision of the Commissioner of Social Security which denied her claim for disability insurance benefits. She contends that the Administrative Law Judge ("ALJ") assigned to her case: (i) failed to adequately consider whether her impairments met or equaled the criteria of a listed impairment at step three; and (ii) failed to adequately develop the record by refusing Wagers' request for a consultation with a medical expert to determine whether her impairment met a listed impairment. [Record No. 11] She also asserts that the ALJ's conclusion about her residual functional capacity ("RFC") is not supported by substantial evidence. [*Id*.] In response, the Commissioner asserts in her motion for summary judgment that: (i) Wagers cannot show that she meets a listed impairment; (ii) the ALJ did not err in declining Wagers' request for a medical expert; and (iii) the ALJ's decision is supported by substantial evidence. [Record No. 15]

Having fully considered the matter, the Court concludes that that the ALJ did not err in concluding that Wagers did not meeting a listed impairment, nor did she err in declining

Wagers' request for a medical expert. Additionally, the ALJ's decision that Wagers is not disabled is supported by substantial evidence. Accordingly, the Commissioner's motion will be granted and the relief sought by Wagers will be denied.

I.

Wagers filed an application for Title II Disability Insurance Benefits on June 11, 2018, alleging a disability onset date of June 6, 2018. [*See* Administrative Transcript, "Tr." 152.] The application was denied initially and upon reconsideration by the Social Security Administration. [Tr. 89, 94] Wagers requested an administrative hearing before an ALJ, which was held on February 21, 2020. [Tr. 31, 101] Thereafter, ALJ Mary Beth McMahon issued a written opinion, concluding that Wagers was not disabled under the Social Security Act ("Act"). [Tr. 12] The Appeals Council later denied Wagers' request for review. [Tr. 1] Accordingly, Wagers has exhausted her administrative remedies and the Court may evaluate the decision. *See* 42 U.S.C. § 405(g).

II.

Wagers, a former school cafeteria cook, previously alleged that she was disabled as a result of issues with her right foot, back pain, headaches, carpal tunnel syndrome, anxiety, and depression. [Tr. 37-39] Her current motion for summary judgment focuses almost exclusively on her right ankle and foot pain. [Record No. 11, pp. 2-4]

Wagers sought treatment from podiatrist Heather Jones starting in 2014. On October 17, 2014, Wagers saw Dr. Jones for right heel pain. [Tr. 434] Wagers told Dr. Jones that she felt like someone was stabbing her in the foot and it was most painful when she got up in the morning. [Tr. 434] Dr. Jones injected Wagers with cortisone and prescribed a deep heel orthotic. [Tr. 436] During a follow-up visit on November 10, 2014, Wagers indicated that the

cortisone shot helped a little, along with stretching and icing, but that the pain in her right ankle still felt like "needles sticking." She rated her pain as 5 on a scale of 10. [Tr. 437] Dr. Jones again injected cortisone in the affected area. [Tr. 438] Wagers returned on March 16, 2015, complaining of continued foot pain. During this visit, she indicated that she could not tolerate the orthotics. [Tr. 445]

A MRI performed on March 2, 2015, indicated that Wagers had moderate plantar fasciitis with a delamination tear and tendonitis with spring sprain. [Tr. 447] Dr. Jones performed a plantar fasciotomy on June 25, 2015. [Tr. 456] But Wagers continued to complain of ankle pain during follow-up appointments on July 1, 2015 and July 15, 2015. [Tr. 458, 461] A second MRI was taken on October 30, 2015, which indicated a peroneus brevis tear. [Tr. 473] Dr. Jones performed a second surgery, repairing Wagers' right peroneus brevis and longus tendons in December 2015. [Tr. 475-477] Wagers also received a follow-up MRI on July 26, 2016, that indicated a peroneus brevis tear. [Tr. 478]

In July 2017, Dr. Jones referred Wagers to foot and ankle surgical specialist Collin Ball, D.P.M. [Tr. 312] On July 13, 2017, Wagers saw Dr. Ball and complained of right ankle pain and swelling. [Tr. 313] A previous MRI indicated "increased T2 signal in distal peroneal brevis tendon and tenosynovitis." [Tr. 313] Dr. Ball ordered physical therapy and another MRI to compare the images. [Tr. 313] Wagers received nerve blocks on August 7, 2017; August 24, 2017; September 12, 2017; October 12, 2017; and February 20, 2017. [Tr. 314] Thereafter, Wagers went for another MRI, which showed a complete tear of the ATFL ligament. [Tr. 322, 331]

Dr. Ball operated on Wagers right ankle on June 6, 2018. [Tr. 327, 333] Specifically, he performed an ankle arthroscopy, peroneal repair, and neurectomy of the sural nerve. [Tr.

333] Wagers continued to see Dr. Ball, complaining of right ankle pain after her third surgery. [Tr. 577-583] Dr. Ball prescribed tramadol for pain manage because Wagers could not afford "conventional pain management." [Tr. 579] Dr. Ball last saw Wagers on November 18, 2019, and observed "mild edema around the peroneal tendon course," 4/5 muscle strength weakness, and decreased sensation to the sural nerve dermatome. [Tr. 577]

Dr. Ball completed a medical opinion form regarding Wagers' ability to perform work-related activities in February 2020. [Tr. 696-99] He checked that Wagers could lift and carry less than 10 pounds on a regular basis but could not carry or lift anything on a frequent basis. He also indicated that Wagers could stand and walk for less than 5 minutes at a time and could only stand or walk for less than 2 hours in an 8-hour workday. [Tr. 696] He circled that Wagers would need unscheduled breaks because of her disability. [Tr. 697] Dr. Ball also checked that Wagers could never climb stairs, ramps, or ladder/scaffolds, nor could she balance, stoop, kneel, crouch, or crawl. [Tr. 697] He explained that Wagers needed a brace or a cane to help with ambulation "as needed." [Tr. 698] Finally, Dr. Ball concluded that Wagers was not physically capable of working an 8-hour workday, 5 days a week on a sustained basis.

Conversely, state agency consultant Lawrence Schaffzin, M.D., concluded that Wagers could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; and sit, stand, or walk about 6 hours in an 8-hour workday based on her physical ailments. [Tr. 66] He also determined that Wagers could frequently climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, and could occasionally climb ladders, ropes, or scaffolds. [Tr. 66-67] Upon reconsideration, state agency consultant, Brian Strain, M.D., indicated that there were no changes to Wagers' medical conditions, and he affirmed the initial RFC finding. [Tr. 80]

Wagers' husband, Johnny Wagers submitted a third-party function report on July 15, 2018. [Tr. 176] He explained that Wagers could only stand for a very short period, that she frequently loses her balance when she stands, and that she has trouble gripping items. [Tr. 177] Wagers' husband explained that either he or the children do all the housework, yard work, cook, and feed their pets. [Tr. 178] And he noted that Wagers requires help to do about everything now and merely getting around was difficult for her. [Tr. 182]

Wagers appeared for an administrative hearing before ALJ McMahon on February 21, 2020. [Tr. 33] She testified that her most severe health issue was foot pain. [Tr. 20] She explained that she has had three surgeries, takes pain medicine, and wears a brace, but still has stabbing pain in her foot. [Tr. 40] Wagers stated that she sits on a bar stool near the stove when she cooks dinner. [Tr. 50] She also noted that she props up her foot five to six hours a day, and she can only be on her feet for five to ten minutes before she must sit down. [Tr. 51] Wagers also noted that she experiences headaches multiple times each month, tremors in her hands, and anxiety. [Tr. 46-48]

Vocational Expert Kenny Boaz testified that there are jobs in the national economy that Wagers could perform including the duties of a parking lot cashier, information clerk, or toll collector. [Tr. 55-56][1]

ALJ McMahon concluded that Wagers was not disabled within the meaning of the Social Security Act, in a written decision issued July 2, 2020. [Tr. 26] The ALJ found that Wagers had not engaged in substantial gainful activity since June 6, 2018, the alleged disability

---

[1] The ALJ declined to grant the request for a medical expert at the hearing. [Tr. 35]

onset date. [Tr. 17] ALJ McMahon further determined that Wagers had the following severe impairments: degenerative joint disease of the right foot status post tendon repair, removal of bone spur, headaches, and obesity. [Tr. 18]

The ALJ concluded that Wagers did not have impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 19] In reaching this conclusion, the ALJ explained that, while Wagers had "'severe' impairments, the undersigned [found that] the record does not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or medically equal the criteria of any listed 1.00 Musculoskeletal Disorder or 11.00 Neurological Disorder." [Tr. 20]

ALJ McMahon further concluded that Wagers had the Residual Functional Capacity ("RFC") to perform "light work," subject to the following limitations:

> She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk each for 30 minutes at a time for a total of up to 6 hours each in an 8-hour workday with normal breaks. She should never climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs. She can frequently stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to vibrations, unprotected heights, and dangerous machinery.

And after considering Wagers' age, education, work experience, and RFC, the ALJ found that there were jobs in the national economy that Wagers was able to perform. Accordingly, she concluded that Wagers was not disabled under the Act.

### III.

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)

(citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ pursuant to "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. § 404.1520(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312

F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). And the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV.

#### i. The ALJ did not err in concluding that Wagers' impairments did not meet or medically equal a listing.

Wagers asserts that the ALJ did not adequately consider whether the severity of her ankle and foot issue met Listing 1.03 and Listing 1.08. At step three, an ALJ must determine whether a claimant is eligible for benefits based on an impairment or combination of impairments that meet or medically equal a listed impairment. To meet a listing, the claimant "must point to specific evidence that demonstrates [she] could reasonably meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Generally, the ALJ must "actually evaluate the evidence, compare it to the requirements of the relevant listing, and provide an explained conclusion in order to facilitate meaningful judicial review." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 U.S. App. LEXIS 25360, at *6 (6th Cir. Aug. 10, 2020) (citation and quotations omitted).

However, "[t]he Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ provides minimal reasoning at step three of the five-step inquiry." *Brye v. Saul*, No. 3:18-CV-194-HBG, 2019 U.S. Dist. LEXIS 195526, at *10-11 (E.D. Tenn. Nov. 12, 2019). Instead, it has affirmed conclusory step three findings where there are "sufficient factual findings elsewhere in the ALJ's decision to support the conclusion" and the claimant did not show that her impairments met or equaled a listed impairment. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014); *see also Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (affirming the ALJ's decision at step three by looking at other parts of the ALJ's decision for medical support).

Here, although the ALJ's analysis at step three is conclusory, ALJ McMahon detailed the medical records related to Wagers' foot and ankle issues, and thoroughly discussed the impact of those impairments throughout her opinion. As discussed in greater detail below, Wagers cannot show that she met or equaled Listing 1.03 or Listing 1.08.

First, Listing 1.03 requires that the claimant undergo "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.03. The inability to ambulate effectively requires a showing of "an extreme limitation of the ability to walk" and "ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.00B2b1. The ability to ambulate effectively means that the claimant is

"capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.00B2b2.

Wagers contends that she meets Listing 1.03 based on her own statements, her husband's third-party report, and the statements of Dr. Ball because the medical evidence shows she "failed to return to effective ambulation within 12 months of her most recent surgery." [Record No. 11, p. 9] She relies on Dr. Ball's observations that she continued to have the same symptoms, pain, instability, and the need for bracing both before and after her June 2018 surgery. And she further relies on Dr. Ball's February 2020 report indicating that Wagers requires the use of a cane "as needed," and is limited in her ability to stand, walk, and climb. [Tr. 696-98]

The Commissioner asserts that Wagers cannot establish that she meets Listing 1.03 because she did not undergo reconstructive surgery or surgical arthrodesis of her ankle joint, instead she had arthroscopic surgery to repair tendons and nerves. [Record No. 15, p. 14] Additionally, the Commissioner argues that Wagers did not establish her inability to ambulate effectively for a 12-month period because her treatment records showed she had a steady and normal gait with casting, she progressed to weight bearing after 3 months of surgery, and she did not use a hand-held assistive device that limited the functioning of both upper extremities.

Based on all information provided, the undersigned must agree with the Commissioner regarding this issue. Dr. Ball performed an ankle arthroscopy, peroneal repair, and neurectomy of the sural nerve. [Tr. 333] An ankle arthroscopy, repair, and neurectomy are not classified as either a reconstructive surgery or a surgical arthrodesis.[2] And while Wagers continued to

---

[2] A surgical arthrodesis is the "artificial fusion of the bones that form a joint, essentially eliminating the joint." 20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.00H3.

complain of ankle pain following surgery, she cannot show that she has an "extreme limitation of the ability to walk" because there is no evidence that she requires an assistive device that limits the functioning of both of her upper extremities.

When Wagers saw Dr. Ball on June 11, 2019, and August 22, 2019, Dr. Ball only noted mild instability. [Tr. 578] Additionally, on November 18, 2019, Dr. Ball examined Wagers' right ankle and it showed mild edema and 4/5 muscle strength weakness, but he did not observe any gross instability. [Tr. 577] Except immediately following surgery, Dr. Ball did not prescribe or recommend any type of assistive ambulatory device, until he filled out the medical opinion form regarding Wagers' ability to do work-related activities, where he opined that the claimant should use a brace or a cane "as needed." [Tr. 696-99]

On January 15, 2019, Rebecca Lockhart, APRN, observed that Wagers' gait was "steady and normal." [Tr. 606] And there is no evidence in the record that demonstrates that Wagers used a cane or hand-held ambulatory assistive device except immediately following surgery. Both state agency physical consultants considered Listing 1.03, and rejected a finding that Wagers met or medically equaled Listing 1.03. [Tr. 77] Accordingly, Wagers cannot show that she satisfies every requirement to meet or equal Listing 1.03.[3]

Next, to meet Listing 1.08, the claimant must show a "[s]oft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.08. Continuing surgical management:

---

[3] For the same reasons, Wagers also cannot meet Listing 1.02.

> refers to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.00M. Courts have considered "functional loss" in determining whether an individual's major function was impaired and restored. *See, e.g.*, *Kiernan v. Astrue*, No. 12-CV-459, 2013 U.S. Dist. LEXIS 74680 at *6 (E.D. Va. May 28, 2013) (explaining that the restoration of major function can be determined by considering the definition of loss of function under Listing 1.00B). Loss of function is defined as "as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.00B2a. As noted previously, the inability to ambulate effectively means there is an extreme limitation in the ability to walk and is marked by insufficient lower extremity function without the use of a hand-held assistive device. 20 C.F.R. Pt. 404, Subpt. P, app. I, § 1.00.2b1.

Wagers contends she meets Listing 1.08 because the peroneal tear requiring surgery is a "soft tissue injury" and she has been under "continuing surgical management," due to her need to wear either a cast or a brace. Additionally, she relies on Dr. Ball's continued observations from her surgery in June 2018 through November 2019. The Commissioner counters that Wagers was weight bearing after 3 months; therefore, she could not demonstrate that she had the requisite loss of major functioning for 12 months.

While Wagers argues that she meets Listing 1.08 due to her continued use of a cast or a brace (and even if the Court considers this "continuing surgical management"), she cannot show that she has loss of major function that was not repaired by surgery. As noted above,

Wagers did not continually use a hand-held assistive device in the 12 months following surgery. [Tr. 577-583] Instead, as the ALJ noted, Dr. Ball allowed Wagers to transition to weight bearing one month after surgery. Further, Ball did not note any gross instability in her follow up appointments, and at some of her appointments she returned wearing a regular shoe without an ankle brace. [Tr. 577-583] Nurse Lockhart also observed that Wagers had a "steady and normal gait." [Tr. 606] Accordingly, Wagers did not have the loss of major functioning for 12 months and cannot meet Listing 1.08. The ALJ did not err in concluding that Wagers' does not have an impairment that meets or equals Listing 1.03 and 1.08.

    **ii.    The ALJ's did not abuse her discretion in declining Wagers' request to consult with a medical expert regarding her foot and ankle impairments.**

Wagers also contends that the ALJ failed to adequately develop the record by refusing her request to consult with a medical expert to determine if her ankle and foot impairments met or equaled a listed impairment. Wagers argues that she identified evidence that she met or equaled every requirement for Listings 1.03 and 1.08.

An ALJ has a duty to ensure that a claimant receives a full and fair hearing. However, an ALJ is not required to call a medical expert to expound upon a claimant's impairments. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009); *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1051 (6th Cir. 1986). Instead, "[a]n administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary decision." *Ruby v. Colvin*, No. 2:13-cv-01254, 2014 U.S. Dist. LEXIS 157404, at *13 (S.D. Ohio Nov. 6, 2014); *see also Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."). If there is sufficient evidence in the administrative record to

determine whether a claimant is disabled, the denial of a request for a medical expert is not an error. *See Audino v. Comm'r of Soc. Sec.*, No. 4:17CV1594, 2018 U.S. Dist. LEXIS 121727, at *21 (N.D. Ohio July 5, 2018).

In this case, ALJ McMahon thoroughly considered Wagers' foot and ankle impairments in determining that Wagers was not disabled. And she utilized all the medical records from Dr. Jones and Dr. Ball, the medical source statement from Dr. Ball, and the conclusions of the state agency physicians when rendering her opinion regarding Wagers' foot and ankle impairment. ALJ McMahon discussed in detail both the medical records from Dr. Jones and Dr. Ball and noted how their clinical findings differed from Wagers' testimony and Dr. Ball's proposed limitations. Additionally, both state agency physical consultants opined that Wagers did not have an impairment that met or medically equaled a listing before determining that Wagers had an RFC to perform light work. [Tr. 59-69, 71-82] In short, there was ample medical evidence in the record to evaluate Wagers' alleged disability and whether the severity of her foot and ankle pain was sufficient to meet a listing, and a medical expert was not necessary to further evaluate the impact of Wagers' foot and ankle impairments. The ALJ did not abuse her discretion in denying Wagers' request for a medical expert.

      **iii.**    **ALJ McMahon's RFC finding is supported by substantial evidence.**

Finally, Wagers asserts that the ALJ's RFC finding is not supported by substantial evidence. A claimant's RFC is "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). The ALJ must develop a claimant's RFC based on the medical evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

If the ALJ's decision is supported by substantial evidence, the decision must be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

Wagers contends that Dr. Ball's assessment of her limitations was consistent with his physical examinations. She also asserts that the ALJ's finding that Wagers can sit or stand for 30 minutes at a time for up to 6 hours in each 8-hour workday with normal breaks is not reasonable based on the severity of her ankle condition. Additionally, Wagers briefly argues that the ALJ did not consider her headaches, back pain, or her non-severe ailments of tremors and carpal tunnel syndrome in developing her RFC.

The ALJ considered Wagers' foot and ankle impairments, along with her headaches, tremors, and obesity, Wagers' perception of her impairments, the medical records from Dr. Ball and Dr. Jones, the source statement from Dr. Ball, and the opinions of the consultative examiners in concluding that Wagers was not disabled and developing her RFC. ALJ McMahon explicitly stated she considered the entire record and all of Wagers symptoms in developing Wagers' RFC. The ALJ detailed the medical records regarding Wagers' foot and ankle impairments, multiple surgeries, and her recovery from her most recent surgery. The ALJ discussed how her impairments were not severe enough to consider her disabled. ALJ McMahon also explained the assigned weight she gave to the medical opinions and the consultative examiners.

Specifically, ALJ McMahon noted that Dr. Ball's limitations were "not consistent with or supported by the clinical evidence of record as documented by Dr. Ball himself or by the

claimant's other treating sources" and concluded that his opinion was not persuasive. [Tr. 24] Prior to his completion of the medical form to do work-related activities, Dr. Ball had concluded that Wagers did not have gross instability in her right lower extremity, she only had "mild edema," nor did he previously advise that she should avoid walking or elevate her legs during the day. [Tr. 429, 577] On November 19, 2018, he recommended a "sit down type job long-term with bathroom breaks and ADLs." [Tr. 583]

ALJ McMahon also found that the state agency medical consultants were somewhat persuasive, but explained that Wagers needed more limitations than those recommended by the state agency medical consultants. [Tr. 24] The ALJ also considered the third-party report of Johnny Wagers and the testimony of the vocational expert in making her decision. Contrary to Wagers' suggestion that ALJ McMahon did not consider her headaches, the ALJ stated that she was "persuaded [that] the claimant's migraine headaches cause significant work-related limitations and ha[d] considered the effect of her headaches in limiting her to light exertional work with limited exposure to vibration, moving mechanical parts, and unprotected heights." [Tr. 23] Further, the ALJ reviewed treatment notes regarding Wagers' carpal tunnel/benign tremors in concluding that these impairments were non-severe. [Tr. 18]

The ALJ's decision is consistent with Wagers' treatment records and the findings of the state agency consultants and her RFC finding is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Tammy Lynn Wagers' Motion for Summary Judgment [Record No. 11] is **DENIED.**

2. Defendant Acting Commissioner of the Social Security Administration Kilolo Kijakazi's Motion for Summary Judgment [Record No. 15] is **GRANTED.**

3. The Commissioner's decision denying benefits will be **AFFIRMED** by a separate judgment entered this date.

Dated: December 16, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky